```
              UNITED STATES DISTRICT COURT          FILED
              NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION                98 MAY 12 PM 1:46

                                                    U.S. DISTRICT COURT
                                                    N.D. OF ALABAMA
SHIRLEY (WARD) STERNENBERG     )
                               )
     Plaintiff,                )
                               )
     vs.                       )         CV-97-L-1226-M
                               )
CONTINENTAL CASUALTY COMPANY   )
                               )
                               )
     Defendant.                )
                               )
```

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

This cause came on for a bench trial before this court on April 21, 1998 upon the pleadings, the order of the pretrial conference, the testimony and exhibits, and the arguments of counsel. The Court enters the following findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, Shirley Ward Sternenberg, was married to Dennis Ward, an employee of GEICO company. Ward was a participant in an employee welfare benefit plan sponsored by his employer. He purchased a "Voluntary Group Accident Insurance Program" that provided accidental death coverage. The coverage is for accidents only.

2. In the early part of 1995, Shirley Ward Sternenberg engaged in an extramarital affair with a man unknown to the court. Her husband at the time, Dennis Ward, learned of the affair.

17

3. On April 15, 1995 Dennis Ward awoke and, at some point that morning, began consuming alcohol. This was the first time Ward had taken a drink in fifteen years. Ward had been taking Zoloft, an antidepressant, since December 1994. Around noon that day, Ward left the house, undetected, with his .38 revolver pistol, his company-issued Ford Taurus and his cellular telephone.

4. Ward drove to a former logging road, less than one-half mile from his home in Shelby County. He continued to consume beer. By that afternoon, he became intoxicated. At some point during the morning, Ward grew severely depressed and suicidal. He was convinced that his wife's affair had not been terminated, and that she had been with the adulterer the previous night.

5. Ward made numerous phone calls from the car early that afternoon. Heartbroken and pain stricken, he called his brother, neighbors and friends. He had several conversations with his wife and sons as well. He told his wife he believed the affair continued and that he was going to kill himself. He told her about the suicide notes he had written that were in his possession.

6. The Shelby County Sheriff's Office was dispatched, pursuant to Shirley Ward's call to 911, to locate Mr. Ward and intervene in an attempt to prevent his suicide. Deputies located Ward several blocks away from his house, on the logging road. Deputies Lawley, Chapman, Chamblee and Sgt. Walters arrived at the scene. The officers observed Ward's actions for some time before they heard a gun shot and noticed the driver's side window of the Taurus had been shot out. They approached to find that Ward had not shot himself and was still alive. Concerned for his safety,

the four deputies spread out around the car to continue monitoring him.

7. Ward did not accidentally drop the gun, causing it to discharge and shatter his window. Ward intentionally shot out the window. He had told his wife that he planned to shoot out the window and then kill himself.

8. Ward, in all likelihood did not know of the deputies' presence until shortly before or while he was exiting his vehicle to urinate. He knew from his wife that they had been called. He had already threatened to kill himself if the authorities were called or involved. Ward threatened to shoot any deputy that intervened at that time and then kill himself.

9. Upon exiting he placed a beer bottle on the roof of the car. He then turned towards the rear of the car and was confronted by Sgt. Walters.

10. Dennis Ward had a gun in his hand when he exited the car. Each of the deputies saw his .38 revolver either before the shooting (Walters) or once Ward was shot (Lawley, Chamblee, and Chapman). Plaintiff has not supplied evidence sufficient to impugn the veracity of each deputy's independent recollection that Ward had a loaded, cocked, revolver in his hand when he exited the Taurus.

11. Sgt. Walters approached to within 10 yards of Mr. Ward and ordered him to show his hands. Once Walters noticed Ward had a gun, he instructed Ward to "drop the gun," three times. Ward failed to drop the gun. Instead, he turned toward Walters, with a smile on his face and possibly a chuckle, and leveled the pistol in

Walters' direction.

12. When Ward left the safety of his vehicle, armed with a loaded .38 revolver and confronted the advancing sergeant, even before being ordered to drop the gun, he became the aggressor. Walters fired his duty sidearm, hitting Ward in his chest and upper abdomen. The gunshots resulted in Mr. Ward's death soon thereafter.

### Conclusions of Law

13. The Court has jurisdiction of this action and of the parties thereto.

14. Dennis Ward's accidental death policy with Continental is part of an employee welfare benefit plan. This employee welfare benefit plan, 29 U.S.C. §§ 1002 (1) and (2), is subject to the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002 et seq.

15. In determining whether defendant correctly denied plaintiff's claim for disability benefits, the claim decision "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see Buckley v. Metropolitan Life, No. 96-6125, 1997 WL 307004, at *4 (11th Circuit June 24, 1997)(Stating that the same standards of review borne out of Firestone apply to factual findings as well as plan interpretations).

16. The Court reviews the defendant's denial of claim under the de novo standard.

17. Dennis Ward's death, although tragic and unfortunate, was not an "accident" according to the definition of the term provided by Alabama law. Continental was entitled to deny Mrs. Ward Sternenberg's claim on the policy.

18. The parties agree that the court is within its province to apply Alabama law in arriving at a definition of "accident" in the context of an accidental death insurance policy. The Alabama Supreme Court described accidental death as having resulted from something unforeseen, unexpected and unusual." O'Bar v. Southern Life & Health Ins. Co., 168 So. 580, 582 (Ala. 1936). The court indicated that:

> when the insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed. Id.

19. Whether he intended anyone harm or not, Dennis Ward was the aggressor in this situation. What is critical is what he expected from the situation knowing the posture he presented to the deputies. He had to realize that as an armed and drunken man, who had already threatened to take his life and the lives of anyone who interfered, he presented a real threat to law enforcement officers.

20. Despite his apparent drunkenness and emotional instability, upon realizing he was in the presence of armed law enforcement officers, the last thing a non-aggressor would have

kept in his hand was a loaded and cocked pistol. His status as the aggressor is further supported by the fact that he refused to drop the gun when ordered to do so numerous times. And furthermore, by turning his gun on an armed deputy, there can be no question that Mr. Ward assumed the posture of the aggressor.

21. Although Mr. Ward may have "calmed down" and been ready to return home before exiting the car, his state of mind obviously changed between telling his wife he was going to use the bathroom and discovering the deputies surrounding his car. It is at that point where his expectations are relevant to determining whether he could have reasonably anticipated the result of his actions.

22. Ward exited the car with a deadly weapon, loaded and cocked, refused to drop it when so ordered, and turned it to bear upon Sgt. Walters. The conduct amounts to an attack that naturally invited a deadly encounter. Mr. Ward was the aggressor and reasonably anticipated that his acts would result in death or bodily injury. Howard v. Southern Life & Health Insurance Company, 474 So.2d 1109, 1111 (Ala. 1985). Ward knowingly put his life at risk.

23. Dennis Ward's death was not the proximate result of an accident, hence Shirley Ward's claim was properly denied.

DONE this 12th day of May 1998.

_____
SENIOR JUDGE